**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAOMI KOGA-SMITH,

        Plaintiff,

    v.

METLIFE, *et al.*,

        Defendants.
_____/

No. C-12-4050 EMC

**ORDER GRANTING DEFENDANT CARTER'S MOTION FOR SUMMARY JUDGMENT**

**(Docket No. 31)**

        Plaintiff Naomi Koga-Smith has filed suit against Defendants MetLife and Lisa Keala Carter, asking for a declaration that she, and not Ms. Carter, is entitled to the life insurance proceeds of her deceased husband, Herbert E. Smith, Jr. On January 25, 2013, Ms. Carter filed a case management conference statement, *see* Docket No. 31 (statement), which the Court deemed a motion for summary judgment. *See* Docket No. 35 (civil minutes). Currently pending before the Court is that motion for summary judgment. MetLife supports Ms. Carter's motion -- *i.e.*, more specifically, it agrees with her contention that she is entitled to half of the proceeds and that Ms. Koga-Smith is entitled to the other half. *See* Docket No. 41 (Resp. at 5). Ms. Koga-Smith, however, still maintains that she is entitled to the entirety of the proceeds.

        Having considered the parties' briefs and accompanying submissions, the Court finds this matter suitable for disposition without oral argument and hereby **GRANTS** the motion for summary judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

The parties do not dispute the following facts. Prior to his death, Mr. Smith had a life insurance policy with MetLife. Under the policy, Mr. Smith's beneficiary or beneficiaries would receive more than $300,000 upon his death. Ms. Koga-Smith was married to Mr. Smith at the time of his death. Ms. Carter is Mr. Smith's sister.

Records obtained from Mr. Smith's employer, Ridge Vineyards, were obtained during discovery. Those records reflect as follows. In or about December 2003, Mr. Smith decided to purchase life insurance during his employer's open enrollment. Mr. Smith designated Ms. Koga-Smith, his wife, as his primary beneficiary and his daughter as his secondary beneficiary. *See* Docket No. 46 (Efting Decl., Ex. D at 25-26). In June 2005, Ridge Vineyards changed the insurance carrier to MetLife. *See* Docket No. 46 (Efting Decl., Ex. D at 23). Shortly thereafter, in or about July 2005, Mr. Smith filled out a MetLife enrollment form and changed his beneficiary designation. More specifically, instead of just one primary beneficiary, Mr. Smith designated two primary beneficiaries: Ms. Koga-Smith (his wife) and Ms. Carter (his sister). Subsequent documents indicate that Mr. Smith did not thereafter make a change in the beneficiary designation.[1] *See, e.g.*, Docket No. 46 (Efting Decl., Ex. D at 18-20).

With respect to changes in beneficiaries, MetLife's insurance plan provides as follows: "You may designate a Beneficiary in Your application or enrollment form. You may change Your Beneficiary at any time. To do so, You must send a Signed and dated, Written request to the Policyholder using a form satisfactory to Us." Docket No. 47 (Efting Decl.) (Plan at 62). "Us" is defined in the plan as MetLife. *See* Docket No. 45 (Efting Decl.) (Plan at 23).

---

[1] In her reply brief, Ms. Carter suggests that the documents received from Ridge Vineyards should be given no weight because they were received by facsimile and Ms. Koga-Smith's attorneys never examined the originals. *See* Docket No. 52 (Reply at 2). But these documents are capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Moreover, Federal Rule of Evidence 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Finally, the Court notes that it is actually in Ms. Carter's interest for the documents to be considered because, if the Court were to ignore the documents, then it could not take into account the critical designation-of-beneficiary form that favors Ms. Carter.

## II. **DISCUSSION**

A.  Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See Anderson.*, 477 U.S. at 255. Where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

B.  Plan Terms

"The Employee Retirement Income Security Act of 1974 (ERISA) generally obligates administrators to manage ERISA plans 'in accordance with the documents and instruments governing' them." *Kennedy v. Plan Adm'r for Dupont Sav. & Invest. Plan*, 129 S. Ct. 865 (2009); *see also* 29 U.S.C. § 1104(a)(1)(D) (providing that "a fiduciary shall discharge his duties with

3

respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan"). Ms. Koga-Smith argues that Ms. Carter is not entitled to half of the insurance proceeds because distribution to Ms. Carter would be inconsistent with the terms of the insurance plan. According to Ms. Koga-Smith, even though her husband filled out a form in July 2005 designating Ms. Carter as one of his primary beneficiaries, that designation should be given no effect because the form he filled out was incomplete -- more specifically, page 2 out of the 3-page form is missing.

Even if the Court makes all inferences in Ms. Koga-Smith's favor and assumes that there is a missing page, summary judgment in favor of Ms. Carter is still proper. As noted above, the MetLife plan provides that "You may designate a Beneficiary in Your application or enrollment form. You may change Your Beneficiary at any time. To do so, You must send a Signed and dated, Written request to the Policyholder using a form satisfactory to Us." Docket No. 47 (Efting Decl.) (Plan at 62). Ms. Koga-Smith contends that the change-in-beneficiary form is not "satisfactory" because it is incomplete, but the question is not whether the form is satisfactory in the abstract or even from the point of view of a reasonable person but rather whether the form is "satisfactory to *Us*" (emphasis added) -- *i.e.*, to MetLife. MetLife has considered the form and, as stated in its brief in response to the summary judgment motion, it believes that the change in beneficiary should be given effect.[2] *Cf. Alliant Techsystems, Inc. v. Marks*, 465 F.3d 864, 870 n.1 (8th Cir. 2006) (noting that, based on the terms of the plan, the plan administrator found the beneficiary designation enforceable "because the missing relationship information was 'not a material omission' under the Plan"; adding that, "[u]nless we conclude that the designation was not valid under any reasonable interpretation of Plan terms, . . . [the plan administrator's] determination that it was valid under the Plan eliminates our

---

[2] *See also* Docket No. 47 (Efting Decl.) (Erisa Information) (ADMIN 000072) (providing that, "[i]n carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan[;] any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious").

4

1  need to resort to [the] doctrine [of substantial compliance]" which could be used to give effect to an
2  insured's intent).

3        Even if MetLife had not taken that position, Ms. Koga-Smith would fare no better.  The
4  Ninth Circuit has recognized the equitable doctrine of substantial compliance, which can be used to
5  give effect to an insured's attempt to change a beneficiary, even though it may be less than what the
6  plan strictly requires.  *See BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 827 (9th Cir.
7  2000).  In *BankAmerica*, the Ninth Circuit held that state law on substantial compliance governs
8  rather than federal common law.  Under California law, there is substantial compliance

> "[w]here the insured makes every reasonable effort under the circumstances, complying as far as he is able with the rules, and there is a clear manifestation of intent to make the change, which the insured has put into execution as best he can, equity should regard the change as effected."

12 *Id.*  Although, for purposes of summary judgment, the Court makes all inferences in Ms. Koga-
13 Smith's favor, the fact remains that there is no evidence to suggest that Mr. Smith did not make
14 every reasonable effort to change the beneficiary designation.  Mr. Smith filled out the form shortly
15 after MetLife became the new insurance carrier and, at that time, there was a clear manifestation of
16 Mr. Smith's intent to make the change in beneficiary.  The designation was signed and dated by Mr.
17 Smith, and there is nothing to suggest that any information about beneficiary designation was on a
18 page other than page 3.  Mr. Smith made no further changes to the beneficiary designation.

### III.  CONCLUSION

20       For the foregoing reasons, the Court **GRANTS** Ms. Carter's motion for summary judgment.
21 MetLife is instructed to disburse 50% of the insurance proceeds to Ms. Koga-Smith and 50% of the
22 insurance proceeds to Ms. Carter.  This ruling disposes of Ms. Koga-Smith's claims and thus the
23 Court would ordinarily direct the Clerk of the Court to enter judgment and close the file in the case.
24 However, because Ms. Carter has intimated that she may want to file crossclaims or counterclaims,
25 the Court shall not at this time order a final judgment.  If Ms. Carter wishes to file a crossclaim or
26 ///
27 ///
28 ///

counterclaim, she must do so within thirty (30) days of the date of this order. If she does not, then the Clerk of the Court shall automatically enter a final judgment in accordance with this order and close the file in the case.

IT IS SO ORDERED.

Dated: March 12, 2013

_____
EDWARD M. CHEN
United States District Judge